UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br>JUAN CARLOS MARTINEZ-CARRANZA,<br>Defendant | CASE NO. 1:13-CR-0107 AWI<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 43) |

On August 14, 2020, Defendant Juan Carlos Martinez-Carranza filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). See Doc. No. 43. Defendant is currently housed at the CI Reeves federal prison in Texas. Based on his medical conditions, the conditions of confinement at CI Reeves, and the Covid 19 pandemic, Defendant seeks compassionate release in the form converting his sentence to time served followed by supervised release. See id.

*Background*

On January 27, 2014, pursuant to a plea agreement, Defendant pled guilty to one count of violation of 18 U.S.C. § 841, possession of a controlled substance (methamphetamine) with intent to distribute. See Doc. Nos. 14, 15.

On April 28, 2014, Defendant was sentenced to a term of imprisonment of 120 months imprisonment and 60 months supervised release. See Doc. Nos. 19, 20.

On February 6, 2015, Defendant filed a 28 U.S.C. § 2255 petition to vacate his sentence. See Doc. No. 21. The petition was denied on May 7, 2015. See Doc. No. 22. The Ninth Circuit affirmed the denial of the § 2255 petition on July 17, 2017. See Doc. No. 37.

On June 17, 2020, Defendant filed a request with the Warden of CI Reeves for compassionate release. See Doc. No. 43-1 at Ex. A.  The Warden of CI Reeves denied Defendant's request on June 23, 2020. See id.  The Warden denied the request because Defendant has an active ICE Detainer. See id.

On August 14, 2020, Defendant through counsel filed this motion for compassionate release under § 3582(c)(1)(A). See Doc. No. 43.

To date, Defendant has served about 7.5 years/75% of his sentence, and has a projected release date of September 5, 2021.

*Defendant's Argument*

Defendant argues that he has met the § 3582(c)(1)(A) exhaustion requirement because more than 30 days have lapsed since the Warden of CI Reeves received his request for compassionate release.  Defendant argues that he is at high risk of suffering severe illness or death from Covid 19 because he suffers from coronary artery disease/a serious heart condition based on past and current symptoms (although it has not been formally diagnosed), pulmonary hypertension, and stomach ulcers/gastritis.  Defendant also has concerns that he may have contacted Covid 19, but he has not been tested.  Defendant also argues that he is housed with 49 other inmates, their beds are spaced less than six feet apart, he cannot practice social distancing, he is not provided with cleaning products to sanitize his environment, outside air is pumped into the facility, and the water has a strong chemical taste.  Further, as of the date of this motion, 11 inmates have been diagnosed with Covid 19 at CI Reeves.  Defendant argues that his serious medical conditions/compromised immune system, the living conditions at CI Reeves, and the Covid 19 pandemic which is active in CI reeves, constitute extraordinary and compelling reasons to grant compassionate release.  Further, because the relevant 18 U.S.C. § 3553 factors weigh in favor of Defendant, this motion should be granted.

*Government's Opposition*

The United States notes that because more than 30 days have lapsed from the date that the Warden of CI Reeves received Defendant's request for compassionate release, Defendant has met § 3582(c)(1)(A)'s exhaustion requirement.  However, the United States argues that the BOP is

implementing all current CDC procedures and guidelines and issuing appropriate masks to inmates and staff. Further, Defendant is 33 years old and told a probation officer that he was in good health except for stomach ulcers as part of the pre-sentence report. The heart condition of which he complains has never been diagnosed, and his medical records indicate that he has high cholesterol, secondary hypertension (not pulmonary hypertension), and gastroesophageal flux. Defendant's secondary hypertension and high cholesterol appear to be adequately controlled. Although he was examined for chest pains and shortness of breath, his lungs were clear, and the medical professional opined that the chest discomfort was related to stress and anxiety. Defendant has no condition that places him at risk for severe illness from Covid 19. A reduction of sentence, based solely on concerns of Covid 19 spreading, is not warranted and will interfere with BOP's anti-Covid 19 efforts. Additionally, Defendant represents a continuing danger to the community and the § 3553 factors weigh against compassionate release.

### *Legal Standard*

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). In relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances," defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34.

3

*Discussion*

After review, the Court will deny the motion for two reasons.

First, the Third and Sixth Circuits have found that the administrative exhaustion requirement of § 3582(c)(1)(A) is mandatory even in the context of Covid 19.  Alam, 960 F.3d at 835-36; Raia, 954 F.3d at 597 (noting, in the context of an individual who did not wait 30 days from making a request for compassionate release before moving for release in the federal court system, "Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point."). The Ninth Circuit has held that "while judicially created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and thus, preclude any exercise of discretion by the court."  Gallo Cattle Co. v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); see Shaw v. Bank of Am. Corp., 946 F.3d 533, 541 (9th Cir. 2019).  Consistent with *Gallo Cattle* and *Shaw*, numerous district courts, including opinions from the Eastern District of California, have held that § 3582(c)(1)(A)'s exhaustion requirement may not be waived.  E.g. United States v. Howard, 2020 U.S. Dist. LEXIS 113628, *5 (E.D. Cal. June 29, 2020) (Ishii, J.); United States v. Logan, 2020 U.S. Dist. LEXIS 88672, *3-*4 (W.D. N.C. May 20, 2020) (and numerous cases cited therein); United States v. Cruceru, 2020 U.S. Dist. LEXIS 84502, *3 (E.D. Cal. May 12, 2020) (Nunley, J.); United States v. Valladares, 2020 U.S. Dist. LEXIS 75182, *4 (S.D. Cal. Apr. 29, 2020) (and cases cited therein); United States v. Meron, 2020 U.S. Dist. LEXIS 66533, *5 (E.D. Cal. Apr. 15, 2020) (Mueller, C.J.).   The failure to exhaust administrative remedies as mandated by § 3582(c)(1)(A) is a jurisdictional failure.  See Gallo Cattle, 159 F.3d at 1197; United States v. Bolanos, 2020 U.S. Dist. LEXIS 148077, *5 (E.D. Cal. Aug. 17, 2020); United States v. Greenlove, 2020 U.S. Dist. LEXIS 114624, *15-*16 (M.D. Penn. June 30, 2020); Howard, 2020 U.S. Dist. LEXIS 113628 at *5; United States v. Smith, 2020 U.S. Dist. LEXIS 113423, *16 (E.D. Ark. May 14, 2020); Meron, 2020 U.S. Dist. LEXIS 66533 at *5.

Here, Defendant has received a denial of his request for compassionate release from the Warden of CI Reese.  Defendant acknowledges that the denial was made well within 30 days from

4

receipt of the request.  See Doc. No. 43-1 at Ex. A.  There is no indication that Defendant appealed the Warden's denial/continued to pursue administrative remedies.  Instead, Defendant contends that he has exhausted his administrative remedies under § 3582(c)(1)(A) because more than 30 days have now passed since the date that the Warden received the request.  Without elaboration, the United States agrees with Defendant that he has met all exhaustion requirements.

There is a significant split among the district courts of this country regarding the proper interpretation of the "lapse of 30 days" language of § 3582(c)(1)(A).  Some courts agree with the parties and hold that there is sufficient exhaustion as long as 30 days lapse from the date the Warden receives a request for compassionate release, period.  E.g. United States v. Ezukanma, 2020 U.S. Dist. LEXIS 141363, *10-*15 (N.D. Tex. Aug. 6, 2020); United States v. Field, 2020 U.S. Dis. LEXIS 78112, *2-*3 (S.D. N.Y. May 4, 2020); United States v. Kesoyan, 2020 WL 2039028, *3 (E.D. Cal. Apr. 28, 2020) (Mendez, J.).  However, other Courts find that the "lapse of 30 days" language creates in essence a limited futility exception.  E.g. United States v. Grasha, 2020 U.S. Dist. LEXIS 142401, *13-*16 (W.D. Pa. Aug. 10, 2020); United States v. Van Sickle, 2020 U.S. Dist. LEXIS 122809, *6-*7 (W.D. Wash. July 13, 2020); United States v. Greenlove, 2020 U.S. Dist. LEXIS 114624, *10-*21 (M.D. Penn. June 30, 2020); United States v. Opoku, 2020 U.S. Dist. LEXIS 107781, *5-*6 (S.D. Miss. June 19, 2020); Smith, 2020 U.S. Dist. LEXIS 113423 at *16-*17; United States v. Seng, 2020 U.S. Dist. LEXIS 82044, *17-*19 (S.D. N.Y. May 8, 2020); United States v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *10-*11 (D. Ariz. Nov. 8, 2019).  Under this view, if there is no response within 30 days of submission of a request for compassionate release, a defendant at that point may proceed to court without further administrative action, but, if there is a timely response, the 30 day lapse language has no application and the defendant must follow the otherwise applicable administrative procedures and appeal the denial.  See id.

This Court has adopted the latter interpretation of § 3582(c)(1)(A) and views the "lapse of 30 days" language as creating a limited futility exception.  See United States v. Falaaga, 2020 U.S. Dist. LEXIS 159479, *7 (E.D. Cal. Sept. 1, 2020); Bolanos, 2020 U.S. Dist. LEXIS 148077 at *7-10 (agreeing with the reasoning of *Seng* and similar cases); United States v. Risley, 2020 U.S.

5

Dist. LEXIS 148078, *13 (E.D. Cal. Aug. 17, 2020) (same).  As applied to this case, Defendant has merely waited more than 30 days since he submitted his request for compassionate release to the Warden of CI Reese even though he received a timely denial by the Warden.  Defendant has not pursued any further administrative remedies/appeals.  Therefore, Defendant has failed to exhaust his available administrative remedies, which is a jurisdictional failure.  See Gallo Cattle, 159 F.3d at 1197; Falaaga, 2020 U.S. Dist. LEXIS 159479 at *8; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *15-*16; Howard, 2020 U.S. Dist. LEXIS 113628 at *5; Smith, 2020 U.S. Dist. LEXIS 113423 at *16; Meron, 2020 U.S. Dist. LEXIS 66533 at *5.  Because of this jurisdictional failure, the Court must deny Defendant's motion.[1]  See Falaaga, 2020 U.S. Dist. LEXIS 159479 at *8; Bolanos, 2020 U.S. Dist. LEXIS 148077 at *11.

Second, and in the alternative, even if the Court were to conclude that Defendant met his burden of demonstrating exhaustion and jurisdiction, the Court would not find that he has demonstrated extraordinary and compelling reasons for compassionate release.  The personal characteristics identified do not clearly show that Defendant is considered at an increased risk of suffering severe illness from Covid 19.  To be sure, the CDC recognizes that those who have "serious heart conditions" are at an increased risk for severe illness from Covid 19.[2]  Defendant indicates that he believes that he has had two heart attacks in the past, once in 2011 when he was 24 (he had chest pains, lost consciousness, and awoke with a numb face but did not see a doctor) and once in 2017 when he was 30 and incarcerated in Taft (same symptoms but prison personnel did not honor Defendant's request to see a doctor).  Defendant also states that he currently has chest pains, neck pains, and back, and that when he has chest pains, he gets a headache, his left arm and hand ache, and the left side of his face goes numb.  The Court does not downplay Defendants symptoms.  However, the fact remains that Defendant cannot point to any medical

---

[1] Given the jurisdictional nature of § 3582(c)(1)(A)'s exhaustion requirement, simply because the parties agree that a lapse of 30 days from the date a warden receives a request for compassionate release constitutes sufficient exhaustion does not make it so.  See Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 n.1 (9th Cir. 1992) (holding that subject matter jurisdiction cannot be created through agreement by the parties); Falaaga, 2020 U.S. Dist. LEXIS 159479, *8 n.3; Risley, 2020 U.S. Dist. LEXIS at 148078 at *12-*13; Smith, 2020 U.S. Dist. LEXIS at 113423 at *6.

[2] See See www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

provider who has diagnosed Defendant with a serious heart condition.  It appears to the Court that Defendant is being monitored by CI Reeves medical personnel, who have diagnosed Defendant's chest pain as stress related.  Medical records indicate that at least one (possibly more) EKG[3] was ordered, given, and reviewed by a provider in late April 2020 with apparently normal results, following Defendant complaint of chest pain and dizziness.  See U.S. Ex. No. 2 at pp. 49-53.  Defendant's lay subjective belief that he has had heart attacks in the past and currently has a serious heart condition is insufficient to establish that he actually has a serious heart condition.[4]  Further, the United States is correct regarding Defendant's hypertension.  There is no diagnosis of pulmonary hypertension, which refers to high blood pressure in the lungs and right side of the heart.[5]  Instead, he has a diagnosis of secondary hypertension, which is hypertension caused by another medical condition.[6]  Hypertension and pulmonary hypertension are not the same.[7]  In the absence of an actual diagnosis, the Court will not view Defendant's hypertension as pulmonary hypertension.  Otherwise, hypertension is recognized by the CDC to be a condition that "might" place individuals at an increased risk.[8]  Therefore, Defendant has not shown that he has a serious heart condition, that he is immunocompromised, or that he otherwise fits into an at risk category for severe illness from Covid 19.[9]  Further, CI Reeves has only 2 inmates with active Covid 19

---

[3] An EKG (or ECG) is a "test used to quickly detect heart problems and monitor your heart's health." www.mayoclinic.org/tests-procedures/ekg/about/pac-20384983

[4] Defendant takes issue with the diagnosis of stress causing his chest pains and contends that personnel at CI Reeves are not investing proper resources to diagnose him.  A prisoner's mere disagreement over treatment or diagnosis does not support a constitutional violation.  See Roquena v. Roberts, 893 F.3d 1195, 1216 (10th Cir. 2018); Hamby v Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016); Reid v. Griffin, 1191, 1192 (8th Cir. 2015).  Nevertheless, if Defendant believes that medical personnel are ignoring a serious medical condition, then he should by all means bring a 42 U.S.C. § 1983 claim against CI Reeves personnel for violation of the Eighth Amendment.

[5] See https://www.mayoclinic.org/diseases-conditions/pulmonary-hypertension/symptoms-causes/syc-20350697.

[6] See https://www.mayoclinic.org/diseases-conditions/secondary-hypertension/symptoms-causes/syc-20350679#:~:text=Secondary%20hypertension%20(secondary%20high%20blood,arteries%2C%20heart%20or%20endocrine%20system.

[7] https://phassociation.org/patients/aboutph/types-of-ph/#:~:text=The%20term%20pulmonary%20hypertension%20refers,of%20the%20heart%20work%20harder.

[8] See www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[9] The CDC does not list high cholesterol or hyperlipidemia as a condition that either places a person at increased risk or might place a person at increased risk for severe illness from Covid 19.  See www.cdc.gov/coronavirus/ 2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

infections.[10]  This is not a large outbreak and represents a significant decline in active cases.[11]

In sum, Defendant has demonstrated that he might be at an increased risk of serious illness in a prison that has two active cases of Covid 19 (down from eleven inmates at the time this motion was originally filed).  That is insufficient to demonstrate extraordinary and compelling circumstances that would justify compassionate release.

## ORDER

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate release (Doc. No. 43) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   September 8, 2020                           _____
                                                                            SENIOR  DISTRICT  JUDGE

---

[10] See www.bop.gov/coronavirus/#:~:text=COVID%2D19%20Cases&text=There%20are%201%2C407%20federal%20inmates,attributed%20to%20COVID%2D19%20disease.

[11] In reply, Defendant cites a September 2, 2020, article from CNN for the proposition that inmates in the BOP are twice as likely to die from Covid 19 than the general population.  The Court has not reviewed this article and does not make any judgements concerning the article's methodology, conclusions, or persuasiveness because of the jurisdictional failure in this case.  However, the Court does note that the BOP has approximately 127,000 inmates in custody, has had 10,904 inmates who have recovered from Covid 19, currently has 1,845 inmates with Covid 19, and has had 118 inmates die from Covid 19.  See www.bop.gov/ coronavirus/index.jsp.  In other words, of the 12,749 inmates who have or who had Covid 19, 118 of them have died.  118 of 12,749 is just under 1%.